**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                   )
BOSTON CHAPTER, NAACP, INC., et    )
al.,                               )
                                   )
            Plaintiffs,            )
                                   )
                                   )
v.                                 )    Civil Action
                                   )  Nos. 72-3060, 73-00269-
                                   )  PBS
NANCY B. BEECHER, et al.,          )
            Defendants.            )
_____)


_____
                                   )
PEDRO CASTRO, et al.,              )
                                   )
            Plaintiffs,            )
                                   )
                                   )
v.                                 )
                                   )    Civil Action
                                   )  Nos. 70-1220-W, 74-2982-C
                                   )
NANCY B. BEECHER, et al.,          )
            Defendants.            )
_____)


**MEMORANDUM AND ORDER**

June 27, 2018

Saris, Chief U.S.D.J.

    On February 21, 2018, this Court issued a Memorandum and Order concerning the consent decrees governing the entry-level

1

hiring procedures for police and fire departments in certain cities in Massachusetts.[1] Boston Chapter, NAACP, Inc. v. Beecher, 295 F. Supp. 3d 26 (D. Mass. 2018). The Court assumes familiarity with the opinion.

The parties jointly moved to modify the consent decrees on the ground that "the consent decrees were actually having the adverse and unintended effect of 'capping' minority representation in certain remaining consent-decree cities." Id. at 29. While most of the proposed modifications were agreed upon, the parties disagreed on the methodology for determining the "qualified labor pool" for purposes of measuring when "rough parity" had been reached. Id. at 31. Both parties agreed to hire Dr. Bryan Ricchetti, a well-qualified labor economist who issued a report. Dkt. No. 15. The Court ruled on most of the challenges to his calculations but had questions about the data he relied on with respect to criminal records. Specifically, my concern focused on the data used to measure the statutory disqualification based on an applicant's criminal record. I wrote:

> Dr. Ricchetti adjusted the qualified labor pool population to reflect the statutory disqualification based on a criminal record. To determine the qualified labor pool population for police officers, Dr.

---

[1]    The police department consent decree governed Brockton, Chelsea, Holyoke, Lawrence, Lowell, Randolph, Springfield, and Worcester. The fire department consent decree governed Chelsea, Holyoke, Lawrence, and Springfield.

Ricchetti relies on the 2009 National Longitudinal Survey of Youth ("NLSY") which calculates "the share of the population that has ever been incarcerated by race, age, gender, and education" and compares this nationwide data with the Bureau of Justice Statistics inmate surveys from 1997 and 2003 for purposes of robustness. Ricchetti Report at 9. Dr. Ricchetti opines that "incarceration is typically associated with more serious crimes, and is, thus a reasonable proxy" for someone being disqualified from the labor pool. Id. at 10. He acknowledges that incarceration rates are an "imperfect proxy" because they can be both over- and underinclusive. Id. "[I]t is possible that an applicant who was previously incarcerated for a relatively minor offense would not be disqualified from the labor pool. On the flip side, it is also possible that some applicants might have never been incarcerated in their life despite having committed one of the crimes that disqualifies them from the job." Id. Notwithstanding these data limitations, I agree with Dr. Ricchetti that incarceration is typically associated with more serious crimes and is, thus, a reasonable proxy for the likelihood of a person having committed a serious crime that would disqualify her from being a police officer. See Ricchetti Report at 10.

Plaintiffs challenge the data on the ground that the incarceration rates are based on national statistics. Dr. Ricchetti relies on the NLSY data, but he concedes that consent-decree-city incarceration rates may differ from national rates. However, he was not "aware of data that could inform the direction of the potential bias, if any." Id.

Based on the statistics from the 2016 Massachusetts Sentencing Commission report, cited by Defendants, the Court is not persuaded that the national incarceration rates are a reasonable basis for evaluating the qualified pool for police officers. The Commission's statistics indicate that 655 Blacks are incarcerated per 100,000 in the population in Massachusetts, compared to 1,627 Blacks per 100,000 in the nation. However, 401 Hispanics are incarcerated per 100,000 in Massachusetts, as opposed to 362 per 100,000 in the nation, Mass. Sent'g Comm'n, Selected Race Statistics 1, 2 (2016) available at

3

>http://www.mass.gov/courts/docs/sentencing-commission/selected-race-statistics.pdf. Thus, the combined statewide rate of incarceration of minorities appears to be lower than the nationwide rate. The Court does not understand the precise impact of this Sentencing Commission data on the qualified labor pool, but a supplemental report is necessary to reflect available statewide data or to explain why that data is inapplicable or unreliable. Plaintiffs also contend that Dr. Ricchetti's incarceration analysis is inaccurate because he does not use city-level incarceration data. The Court disagrees that such localized data are necessary because there is no evidence that the data vary from city to city.
>
>Plaintiffs point out the criminal-record disqualification for entry-level firefighters is much narrower than the factors that lead to disqualification of entry-level police officers. Individuals are only prohibited from becoming firefighters if convicted of "any crime" within the last year (with certain exceptions). Mass Gen. L. ch. 31, § 50. I agree with Plaintiffs that national data concerning the population of minorities incarcerated is not a fair proxy for the population convicted of any crime in the previous year. It is unclear if the Massachusetts Sentencing Commission has annual conviction statistics that would be helpful. If so, the report may be supplemented.

Id. at 32-33.

In response, on April 23, 2018, Dr. Ricchetti submitted a Supplemental Report. Dkt. No. 65 ("Supp. Rep."). The Supplemental Report persuasively noted two shortcomings of the Massachusetts Sentencing Commission data: 1) the data did not report incarceration rates broken down by "race, age, and education at the same time," which were essential to defining the qualified labor pool; and 2) the data only accounted for incarceration rates at a single point in time, instead of the

probability of ever being incarcerated for people of a given race, age, and education. As such, because an applicant's entire criminal record is relevant when applying for police officer jobs, Dr. Ricchetti opined that the Sentencing Commission data would be underinclusive for purposes of calculating the qualified labor pool for the police departments. He corroborated his original eligibility adjustment with data from the Massachusetts Department of Correction. Supp. Rep. at 5. Therefore, he concluded that the NLSY data was more reliable than the Massachusetts Sentencing Commission data with respect to the qualified labor pool available for entry-level police officer hiring.

With respect to applicants for entry-level firefighter positions, however, Dr. Ricchetti did find it was possible to use Massachusetts-specific data. Id. at 4-5. Specifically, he found that the Department of Corrections data were reliable for calculating the labor pool for firefighters in various age ranges on a year-to-year basis from 2013 through 2017 because individuals are prohibited by statute from becoming firefighters only if convicted of a crime within the previous year. All parties agree with this position.

Plaintiffs urge the Court to jettison any criminal history data from the police qualified-labor-pool analysis since the only data available is national. While state-wide data is

preferable, based on national data as well as data from the Massachusetts Sentencing Commission and the Department of Corrections, I find that failing to account for any criminal history for police officer applicants would create a significantly overinclusive qualified labor pool. Sadly, according to the Department of Corrections data provided by the government, minorities formed a majority of all prison releases in all cities except Lowell over a six-year time period (2011-2016). Dkt. No. 70-1. On average, more than seven out of every eight inmates returning to Springfield and Holyoke are either Black or Hispanic or both. The NLSY data, while imperfect, is the best and most appropriate labor pool information available to reflect the criminal record history of minorities in the consent decree cities. In light of the Court's constitutional obligation to adopt a narrowly tailored remedy, see Mackin v. City of Boston, 969 F.2d 1273, 1275 (1st Cir. 1992), opinion corrected (July 20, 1992), the Court adopts the methodology proposed by the expert both for the police and firefighter qualified labor pools.

## ORDER

The parties shall confer and file a joint proposed order encompassing the relevant parity benchmarks for the remaining consent-decree cities in the 2011 to 2015 time period by July 13, 2018.

/s/ PATTI B. SARIS
Patti B. Saris
Chief U.S. District Judge