IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSTON CHAPTER, NAACP, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> NANCY B. BEECHER, et al., <br><br> Defendants. | Civil Action Nos. 72-3060, 73-269-PBS |
| PEDRO CASTRO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NANCY B. BEECHER, et al., <br><br> Defendants. | Civil Action Nos. 70-1220-W, 74-2982-C |

## **JOINT STATUS REPORT**

Pursuant to the Court's *Order to Modify Governing Decrees* entered on July 17, 2018 (Dkt. 74), the parties jointly submit this annual status report.

1. **Implementation of Modifications to the *Castro* and *Beecher* Decrees**

On July 17, 2018, the Court entered a final modification order amending the Consent Decrees governing both of the above-referenced cases and concerning public safety departments in eight Massachusetts municipalities (the "Decrees"). As previously reported, all such modifications have now been implemented by defendant Human Resources Division ("HRD") without undue difficulty. Below the parties summarize (i) the status of efforts to provide a civil service remedy to approximately 55 Black and Hispanic candidates who were moved down in rank order on certification lists as a result of the application of the certification ratios dictated by the

consent decrees prior to the Court's modification order of September 14, 2016 (Dkt. 24); and (ii) the progress of the seven municipalities subject to the Decrees toward the qualified labor pool "rough parity" benchmarks specified in this Court's July 17, 2018 *Order* (Dkt. 74).

2. **Remedial Measures Applied to Individual Candidates Identified in 2016**

In September 2016, this Court directed the parties to assess any adverse impact of the pre-modification Decrees on Black or Hispanic candidates in the relevant municipalities, and to determine whether any remedial measures would be appropriate. The parties requested and the Court allowed 55 candidates to be placed "at the top of any current or future certifications used for appointment to police of firefighter positions in their respective municipalities until such time as each candidate is appointed, is bypassed, or declines further hiring consideration." Dkt. 21 at 2. The Court allowed the parties' motion on January 25, 2017. Dkt. 24.

If a candidate fails to respond to or declines to pursue three duly noticed vacancies, they are removed thereafter from the eligible list and can only become a candidate again by sitting for a new competitive examination. *See* Dkt. 75 at 3-4. HRD reports that there still remains one candidate (of the initial 55 candidates) entitled to this civil service remedy with one more opportunity to pursue a duly noticed vacancy. Should this candidate fail to respond to or decline the subsequent vacancy, he will have exhausted his opportunity.

3. **Progress of the Remaining Municipalities Toward Rough Parity**

The police Decree remains binding on seven municipalities: Brockton, Chelsea, Holyoke, Lawrence, Randolph, Springfield, and Worcester. The firefighter Decree remains binding on four municipalities: Chelsea, Holyoke, Lawrence, and Springfield. Where vacancies in a given department are few or nonexistent in a given year, significant progress toward rough parity is likely to be hampered. The parties have attached as Exhibit 1 the underlying data of African

American or Hispanic police officers and firefighters for each municipality since 2016. Data compiled by HRD in February of 2021 reflect the following movements toward parity:

### (A) Progress among fire departments

(i) The Decree-defined "minority" complement within the Chelsea Fire Department (CFD) rose between 2016 and the end of 2020, from 28.1% to 32.0%. The parity benchmark approved by the Court is 74.9%.

(ii) The minority complement within the Holyoke Fire Department (HFD) rose between 2016 and the end of 2020, from 20.8% to 40.3%. The parity benchmark approved by the Court is 55.5%.

(iii) The minority complement within the Lawrence Fire Department (LFD) decreased between 2016 and the end of 2020, from 34.4% to 34.1%, although the Caucasian complement of firefighters also decreased slightly from 65.6% to 65% in this same time period. One firefighter lists Native American heritage. The parity benchmark approved by the Court is 77.8%.

(iv) The minority complement within the Springfield Fire Department (SFD) rose between 2016 and the end of 2020, from 47.6% to 58.7%. The parity benchmark approved by the Court is 61.3%.

### (B) Progress among police departments

(i) The minority complement within the Brockton Police Department (BPD) rose between 2016 and the end of 2020, from 35.4% to 42.5%. The parity benchmark approved by the Court is 45.2%.

(ii) The minority complement within the Chelsea Police Department (CPD) rose between 2016 and the end of 2020, from 26% to 46.7%.  The parity benchmark approved by the Court is 70.3%.

(iii) The minority complement within the Holyoke Police Department (HPD) rose between 2016 and the end of 2020, from 28.6% to 36.6%.  The parity benchmark approved by the Court is 49.8%.

(iv) The minority complement within the Lawrence Police Department (LPD) rose between 2016 and the end of 2020, from 29.5% to 51.5%.  The parity benchmark approved by the Court is 72.3%.

(v) The minority complement within the Randolph Police Department (RPD) decreased between 2016 and the end of 2020, from 26.1% to 23.8%.  The parity benchmark approved by the Court is 49%.  This downward change was precipitated by the departure or retirement of two Latinx police officers and an overall decrease in the number of police officers employed by Randolph over the past five years.

(vi) The minority complement within the Springfield Police Department (SPD) rose between 2016 and the end of 2020, from 44.4% to 50.8%. The parity benchmark approved by the Court is 53.8%.

(vii) The minority complement within the Worcester Police Department (WPD) rose between 2016 and the end of 2020, from 20.4% to 22.3%.  The parity benchmark approved by the Court is 25.6%.

**4. Conclusion**

Given the progress being realized in a clear majority of the remaining Decree-governed public safety departments, and the lack of any controversies over implementation of the Decrees,

the parties are not requesting a court hearing at this time. Counsel remain prepared, however, to address any questions the Court might have upon reviewing this status report.

Respectfully submitted,

| | |
|---|---|
| */s/ Kevin S. Prussia* | */s/ Robert L. Quinan, Jr.* |
| Kevin S. Prussia (BBO #666813) | Robert E. Toone (BBO #663249) |
| WILMER CUTLER PICKERING HALE AND DORR LLP | Robert L. Quinan, Jr. (BBO #553010) |
| 60 State Street | OFFICE OF THE ATTORNEY GENERAL |
| Boston, MA 02109 | One Ashburton Place, 20th Floor |
| (617) 526-6000 | Boston, MA 02108 |
| kevin.prussia@wilmerhale.com | (617) 727-2200 |
| | robert.toone@mass.gov |
| | robert.quinan@mass.gov |
| Oren M. Sellstrom (BBO #569045) | *Counsel for Defendants* |
| LAWYERS FOR CIVIL RIGHTS | |
| 61 Batterymarch Street, Fifth Floor | |
| Boston, MA 02110 | |
| (617) 482-1145 | |
| osellstrom@lawyersforcivilrights.org | |

*Counsel for Plaintiff Boston Branch of the NAACP and Plaintiff-Intervenors MAMLEO and Vulcans*

March 31, 2021

CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that electronic copies will be sent to non-registered participants via e-mail on March 31, 2021.

                        */s/ Kevin S. Prussia*
                        Kevin S. Prussia